Please be seated. Call the next case. Case number 13-2315 Harriet White v. Retirement Board of the Policeman's Annuity and Benefit Fund Counsel, you'll have the usual 15 minutes. How much time would you like to reserve for rebuttal? Probably 3 or 4 minutes. How much? 3 minutes. 3 minutes? Okay. And remember to keep your voices up. You're competing with the noise on LaSalle Street. Please identify yourself for the record. David Shmugler for UGLER for the Policeman's Annuity and Benefit Fund of Chicago. Your Honor, this is to me a simple situation. It involves Officer White who seeks credit for two periods of time prior to becoming a Chicago Police Department officer. She was appointed a police officer in April 13, 1998, and she filed an application seeking prior service credit for two particular periods of time, both of which are covered by the Pension Act, 40 ILCS 5-5, 214, subsection B, and subsection C. Subsection B applied to a period of time where she was working for the Corporation Counsel's Office. Counsel, please forgive me for interrupting you at this point. I forgot to mention that our colleague, Justice Bertina Lampkin, is not here. She's ill, but she will be joining us in conference in the ultimate decision of this case. Please proceed. My apologies. As I said, subsection B is the controlling subsection with regard to the service time with the Corporation Counsel's Office. Now, what happened in this case is very simple, I think. In April of 2010, Officer White filed an application. She appeared before the board. I, as the sitting attorney for the board at that time, suggested to her that this could be a possible administrative review. If she needed an attorney, she should ask for time to obtain an attorney. She elected to take time to obtain an attorney. Two years later, she came in for me. Can I interrupt you for a second? So the matter was continued at that point in time, correct? It was deferred. I don't know for what. What does that mean, deferred? Well, it didn't go ahead, and we gave her an opportunity to get another attorney. But it was still pending on the call, right, on the administrative call? That's what's not clear, whether or not the case was continued generally for her to get an attorney. I don't know if there was a, Your Honor, I'm not sure if it actually said continued generally, or it just was taken from the call, and she should come back. I wouldn't have an answer to that. I don't think the record shows that. Right. Okay? So what happened is, some two years later, she obtained an attorney. She came back in. The case was heard. It's very simple. In 2010, when she filed the claim, had the case proceeded at that time, it's very likely she would have been entitled to the benefit under the statute as it existed at that moment. When she came back in 2012, the law had changed, and the benefit that she would have gotten was no longer available because the legislature had passed the section which made it that you had to be on a leave of absence, and they made it somewhat retroactive even before going backwards in time. So the only issue in this case is no one has argued that the statutory change is ambiguous. It is unambiguous. It says exactly what it says. And so the only issue in this particular instance is, was the board correct in applying the law when it actually heard and decided the case, or was the board in error and that the board should have taken the case as it was when she originally filed when the case was heard before us? That's really the issue as far as I see in Section B. As I said before, this court, now counsel for White, spends a lot of time going over legislative intent, which is really not an issue in this case because the statute is unambiguous, and this court, as a matter of fact, I think maybe a month ago in a case, I think the problem with this case is that when Ms. White filed her claim, there was one statute, and it was pending, while the case was pending, the statute changed. And so the question is, you know, which statute is applicable? And the circuit court seemed to agree. I do not disagree with you. I've said that this case hinges upon the fact that so far as this period of time is concerned, as to whether the board And certainly, though, we know that if, that the legislature certainly has within its ability, because it's done it before, to state that its statute will have retroactive application, which was not done in this case. So why should we decide or think that it would be applicable to Ms. White if there was no specific delineation of retroactivity in the statute? Well, to that extent, I don't agree with the court. I do agree it depends on what statute you're going to apply. But I believe the reading of this section that the legislature passed is, it says, provided, provided that in each of these cases, and for all periods specified in this item B, including those beginning before the effective date of this amended act of the 97th General Assembly, the police officer is on leave and continues to remain. So I don't see how you can say that this, I don't see how you can say that this section does not provide for retroactivity analysis. It definitely says it's for all periods specified beginning, going back. To when? Well, it says it's for all periods beginning before the effective date of this act of the 97th General Assembly. That's way past the time of this case. So I come back to the same thing. I agree with Justice Hall that the situation is, which law are we going to apply? The one when she filed the claim? The one when we heard the claim? I look at the statute and it looks like it's retroactive. If the board is bound by this statute, she wouldn't be entitled to the benefit. If the board is not bound by this statute, she would be entitled to the benefit. So then are you conceding the other issue with regards to whether or not her work was investigative? No, that's her second period of time. Right. I'm talking about this particular time, the first period of time. Okay. I would address the second period of time now. Okay. With regard to the second period of time, there is no definition in the act as to what is investigative. But it is clear from the reading of the section, it's clear that it's more than just doing a police duty. It's doing a civilian employee doing investigative work for the police department. To that extent, there are three cases that this court has heard. It heard the Escobar case, it heard the case of Dietrich, and it heard the case of, I believe, third officer Collins. And so when you look at these three cases, it would appear to the court that this case was Collins. That the work that she was doing was more attributable to what Collins was doing as opposed to what Escobar and Dietrich were doing. And based upon that, the board found that it wasn't investigative work. I think there's one thing that has to be really key to me. This board is comprised of eight members. Four of them are police officers. One is elected by patrolmen, one by sergeants, one by lieutenants and above, and one for retirees. If you look at this case, all four of those trustees who have worked within the police department and represent police officers, all voted against White and found that the work that she was performing was not investigative. If you look at her testimony in this case, the record is very short. The questions were asked to her, did you take these reports? Yes, I took reports when she was sitting in the police station at the desk. Why didn't the board take Officer Maxwell's affidavit into consideration? First of all, there was no real showing that he could not have been there to testify and be responsive to questions. The testimony was that he had to work and could not be there. And what else is required in order for it to be verified? What else would have been required for it to be unverified? I don't know what his testimony would have been, but it would have been subject to some examination. And based upon her testimony alone, she did not do investigative work. I don't know the answer to why the board didn't consider it. They thought of it just cumulative of the testimony that she was offering. Well, how would they know if they didn't look at it? Well, then he should have come in and given testimony if it was that valuable to the case. If it was that valuable to her position, he could have come in and given testimony. After all, it is the applicant's burden of proof in all of these cases to prove their case. And so I guess I would come up by saying, you have three cases. You have Escobar, you have Collins, you have Dietrich. If you look at these three cases, and you look at this case as being one of a mixed question of law and fact, could it be clearly said that the board made an erroneous decision? I would address any questions the board may have. Thank you, counsel. We will hear you in rebuttal. Good morning. Thomas Aquinas representing Harriet White. Let me start by addressing the point Mr. Cougar was trying to impress upon both of you. The fact that the board is made up of four police officers and four civilians. And I guess the implication is that, well, the policemen, they know what's investigated and what isn't. Well, these same policemen got it wrong two prior occasions where this court overruled them. That was in the Dietrich case and the Escobar case. Something that I think is important, and I want to bring up, Escobar and Dietrich were both police aides. Collins was a police dispatcher aide. Those are two completely different jobs. They do different things. The board relied upon the definitions taken from a dictionary that appear in this court's opinion in Collins. And while I may quibble with those definitions, I will accept that investigation involves a gathering or a marshalling of facts, taking those facts, doing some analysis, and on the basis of the facts as analyzed, taking some further action. That's exactly what Officer White did in the two instances that we've described in detail in her testimony. Someone came in, started talking to her about barking dogs. She formulated a series of questions, asked these questions, got answers, asked more questions, and determined there's something more going on here than just barking dogs. She referred it to the detective division. It turned out it was a dog fighting ring, which was broken up thanks to her preliminary investigation. The other was a woman and a child comes into the police station. The child's upset. Officer White asks a series of questions, gathers information, does follow-up questions, makes a determination there's something else going on here, refers it to the detective division, the youth officers. They investigate. It turns out this child had been molested. Police officers do preliminary investigations. That's what Maxwell's affidavit makes clear. There is no police department in a major city in America where the officer who originally receives the information follows up on that investigation all the way through to the end, including gathering evidence, going to trial, et cetera. Major police departments are specialized. Counsel, let me ask you, why do you think the statute should be, should not be retroactively, the new statute, should not be retroactively applied? I gave quite a list of reasons in my brief, but there's another one I wanted to talk about today. But the ones I've brought up are statutes are typically not applied retroactively. They're typically applied only prospectively. What about that portion of the language that your opponent quoted just a moment ago?  I'll get to that now. Approximately two months ago, this court issued a Rule 23 opinion in a case that I was involved in with Mr. Cooper called Allen v. The Retirement Ward. It was Justice Hoffman, Cunningham v. The Warden. And I can't actually cite it to you because it's a Rule 23 opinion, but there's language in there in reference to Schroeder v. Morgan Grove Police Pension Fund, 219-113-697. This analysis, especially in light of last month's Supreme Court case in Means dealing with the pension protection clause of the Illinois Constitution, the ability to apply for pension credit for prior service codified in Section 214, relied upon and followed by Officer White, is a benefit of her pension. And it can't be changed, it can't be diminished, it can't be taken away from her because it's protected as a contractual arrangement under the Illinois Constitution. That, I think, is the appropriate answer. And I'll be honest with you, I didn't actually put this together until I had read the Rule 23. And you're a priest, obviously, isn't it? Right. So you can't really bring it to this Court since it's new case law and you know that counsel. I understand. So we can't consider it. that in light of recent developments by the Supreme Court, this Court can certainly take notice of whatever the law is. And I think it applies to the facts in this case. If not for the Board's interpretation of the statute as being a bar to her claim, there's no question she would have had pension credit for the period of time she worked in the Corporation Counsel Office. That's specifically listed in the statute. The second period, it seems clear to me, she was doing investigative work. And I will come around to where I started. Why didn't the Board pay attention to the Nashville affidavit? Why didn't the Board pay attention to Officer White's testimony? You will look at the record and she is in the middle of her testimony when the President of the Pension Board says, I've heard enough. Let's end this and go vote. They cut her off in the middle of her testimony. I had to interrupt them and say, I've got evidence here. I've got this affidavit. All right, we'll take that. But in their decision, they say, we're not going to give it any weight because there was no reason given why he couldn't be here. The affidavit says I can't be there because I have to work. I think the Board treated this officer very poorly. I think the Board didn't take her claim serious. But the question is, the standard is, why was the Board's decision clearly erroneous as demonstrated by the record? That's the standard. Right. Why? Because the Board's interpretation of the statute as being a bar to her claim is clearly, the standard is to no vote review because it's a question of law on that particular issue. And the Board did not apply a liberal interpretation as to this pension statute. The Board's interpretation results in an absurd result. According to the Board's interpretation, the statute has been rewritten, not just amended, rewritten, because you can't get pension credit for service rendered prior to becoming a police officer. If you had to be on a leave of absence from being a police officer when you perform the service you want the credit for, it's impossible to take a leave of absence from a job you don't have that. Statutes prior to the amendment allowed credit for service prior to coming on the job and after becoming a police officer. Applying the amendment this way, no one can get credit for anything they did prior because you have to be on a leave of absence. So I think all the standard rules of statutory construction that I cited in my brief lead to the conclusion that the Board's interpretation of this statute is wrong. Finally, the interpretation of the statute in this file does not even address the reason why the statute was passed. This is not a case where someone is in public employment and they're taking a leave of absence to go work for a labor union, to come back 20 years later and increase their public pension. That's why this statute was passed. I've included the floor debates, the sponsors, statements as to why he wants this passed. Interpreting it the way the Board did in this case is wrong for every reason. If there's any other questions. Thank you, Counsel. Rebuttal. I'm going to be very brief and I'd like to just address a few points. Number one, with regard to subsection B and the issue that Mr. Plinus addresses, why does the section now talk about being on a leave of absence? Well, if you look at 5214 in its entirety, just about every subparagraph requires that the officer be on a leave of absence for the benefit that each one of these subparagraphs talks about. And so when you talk about this amendment that they put in in the legislature, it really is almost bringing into effect subsection B into what every other subsection is. If you look at number A, it starts out while on leave of absence. If you look at subsection B now, it has while on leave of absence. If you look at subsection C, it has while on leave of absence. If you look at an amendment to subsection D, it says while on leave of absence. So I think the whole purpose of this thing was to put it all in context. But over and above that, legislative intent, what Mr. Plinus jumps away from what I said in the beginning, is irrelevant in this issue. Nowhere does he claim that the statute is ambiguous. If it's not ambiguous, you just have to follow what the legislature wrote. And it's very clear that the language, I won't repeat it, it's there, talks about it, going backwards in time. Now the other thing very quickly I want to address is the second point, and that is the investigative service. Look, this is, a policeman is a policeman, and a lot of policemen do ministerial jobs, clerk jobs, and everything else. But in this particular section, a civil employee working for the police department is not a policeman. And therefore, the legislature put in the provision that when you're a civil service employee working within the police department, you have to do investigative work to get the benefit. And his argument is that she did investigative work. He gave two examples. Counsel, thank you. His argument is that she did investigative work, and he cited at least two examples, dealing with the abused child counsel, I'm still talking, and also dealing with the instance with the dog fight, that questions were asked, and she made interpretations, she made inquiry, those various steps that seem to define investigation. Now you can go. Well, if you look at this, what she did is the exact same thing that Collins did, okay, in the decision in which the board was affirmed. Yes, the board was reversed in the Dietrich case, but if you look at the Dietrich case, it's totally different. Dietrich went out on the street. She initiated questions to victims and to witnesses, because the officers could not speak Spanish. So she initiated the questions. She got the answers. She relayed those questions to the officers. She did more follow-up, and the same thing with Escoval. This officer never went out on the street. She was doing a clerk job. She was taking down reports and passing on those reports to somebody else. If that's investigative work, quote-unquote investigative work, then I would suggest the legislature should have left that word investigative out and just said working as a civilian employee in the police department entitles you to the credit. By putting that word in, they wanted something more than just doing the clerk's job within the police department. Thank you very much. Thank you, counsel. This matter will be taken under advisement.